**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| JOHN WALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:19-cv-02844-JPM-tmp |
| v. | ) | |
| | ) | |
| STERLING JEWELERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT**

---

Before the Court are Defendant Sterling Jewelers, Inc.'s ("Sterling") Motion for Summary Judgment, filed on November 24, 2020 (ECF No. 52) and Plaintiff John Walls's Motion for Partial Summary Judgment, filed on November 16, 2020 (ECF No. 50).  Sterling moves the Court for summary judgment dismissing Plaintiff's claim for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 ("ADEA").[1]  (See generally ECF No. 52.)  Walls moves the Court for summary judgment on the issue of Sterling's liability for any violation of the ADEA, as well as for judgment in its favor with respect to three of Sterling's affirmative defenses.  (See generally ECF No. 50.)

For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment is **DENIED AS MOOT**.

---

[1] The only additional claim in Walls's Complaint was for a violation of the Tennessee Human Rights Act.  That claim was dismissed pursuant to a Stipulation of Dismissal on March 3, 2020.  (ECF No. 18; see also ECF Nos. 1 & 14.)

## I.   BACKGROUND

### A. Factual Background[2]

This ADEA case arises out of Sterling's June 18, 2020 termination of Walls, who had served as the Manager of Kay Jewelers Store 2628 ("Store 2628") since approximately September, 2006.  (Compl., ECF No. 1 ¶¶ 1–3, 5; see also Defendant's Statement of Facts ("Def. SOF"), ECF No. 52-2 ¶¶ 1–2.)  Walls's supervisor at the time of his termination was District Manager Eric Smith, who became the District Manager for Walls's District ("Memphis District") in February, 2012.  (Def. SOF ¶ 4.)

For six of the last seven years of Walls's employment, his store failed to meet its sales targets.  (Id. ¶ 13.)  By May, 2018, Walls's store sales were down 32.9%.  (Id. ¶ 49.)  Sterling scheduled a VIP show for Store 2628 with a stated sales goal of $30,379.  (Id. ¶ 50.)  After the VIP show, Walls reported sales of approximately $6,000.  (Id. ¶ 51.)  When Vice President Rick Davis learned about the Store 2628 VIP show's poor performance, he emailed Smith and said, "Is it time to make a change?"  (Id. ¶ 52.)  Smith then began to review Plaintiff's personnel file, including counseling notes and performance evaluations.  (Id. ¶ 53.)

Before any action was taken as to the management of Store 2628, VP Davis retired and was replaced by VP John Daughtery.  (Id. ¶ 54.)  Smith and VP Daughtery discussed Walls's performance and, based on Walls's continued underperformance, Smith recommended either termination or demotion.  (Id. ¶¶ 55–56.)  Smith then proceeded to terminate Walls's employment.  (Id. ¶ 57.)  Walls was 49-years-old at the time of his termination and was replaced by a younger employee, Chastity Gordon-Fortune.  (Id. ¶¶ 59–60; Plaintiff's Statement of Additional Facts in Dispute ("Plaintiff SOF"), ECF No. 63 ¶ 19.)

---

[2] All the facts included in this background are undisputed according to Plaintiff's Response to Defendant's Statement of Undisputed Facts and Defendant's Response to Plaintiff's Statement of Additional Facts in Dispute. (ECF Nos. 62-1 & 66; see also ECF Nos. 52-2 & 63.)

B.  *Procedural Background*

Walls filed his Complaint on December 9, 2019.  (ECF No. 1.)  He then filed a Motion for Partial Summary Judgment on November 16, 2020, arguing that he has established as a matter of law (1) direct evidence that he was terminated because of his age and (2) that Sterling's legitimate, nondiscriminatory reason for termination was pretextual.  (See generally ECF No. 50 at PageID 461–65.)  Walls also argued that three of Sterling's affirmative defenses fail as a matter of law: (1) that Sterling acted in good faith; (2) that Sterling's acts were unintentional; and (3) that Sterling exercised reasonable care to prevent and correct promptly any illegal and/or discriminatory conduct.  (Id. at PageID 465.)  Sterling filed its Response on December 14, 2020, arguing that Plaintiff's Motion should be denied as procedurally improper based on the failure to include a statement of undisputed material facts pursuant to Local Rule 56.1 and reiterating Sterling's arguments from its own summary judgment motion.  (ECF No. 57.)

Sterling filed a Motion for Summary Judgment on November 24, 2020.  (ECF No. 52.)  Sterling argues that (1) age was not the "but-for" cause of Plaintiff's termination; (2) Plaintiff cannot establish that Sterling's articulated legitimate, nondiscriminatory reason for Walls's termination is pretext; and (3) Walls has no direct evidence of discrimination.  (See generally id.)  Walls filed a Response on December 22, 2020, arguing that he can demonstrate pretext because Sterling's stated legitimate, nondiscriminatory reason for Walls's termination (1) has no basis in fact; (2) did not actually motivate Walls's termination; and (3) was insufficient to motivate Walls's termination.  (ECF No. 62.)  Sterling filed a Reply on January 5, 2021, noting that Walls failed to address Sterling's arguments regarding age not being the but-for cause of Walls's termination.  (ECF No. 65.)

A Telephonic Motion Hearing was held on January 28, 2021 regarding the Parties' cross-motions for summary judgment.  (ECF No. 71.)  At the Motion Hearing, the Parties were ordered to submit supplemental briefs regarding <u>Pelcha v. MW Bancorp, Inc.</u>, 984 F.3d 1199 (6th Cir. 2021) (hereinafter "<u>Pelcha I</u>").[3]  (ECF No. 71.)  Both Parties submitted their supplemental briefs on February 4, 2021.  (ECF Nos. 73 & 74.)

## II.   LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." <u>Bruederle v. Louisville Metro Gov't</u>, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the non-moving party."  <u>Robertson v. Lucas</u>, 753 F.3d 606, 614 (6th Cir. 2014) (citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)).  "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact."  <u>Mosholder v. Barnhardt</u>, 679 F.3d 443, 448 (6th Cir. 2012) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  <u>Mosholder</u>, 679 F.3d at 448–49; <u>see also</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 587.  "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper."  <u>Martinez v.</u>

---

[3] An opinion amending and superseding <u>Pelcha</u>, 984 F.3d 1199 was entered on February 19, 2021, after the Telephonic Motion Hearing and after the supplemental briefs were filed.  <u>See</u> <u>Pelcha v. MW Bancorp, Inc.</u>, 988 F.3d 318 (6th Cir. 2021) (hereinafter, "<u>Pelcha II</u>").

Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted).

In order to "show that a fact is, or is not, genuinely disputed," a party must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." L.R. 56.1(b)(3); Bruederle, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" Martinez, 703 F.3d at 914 (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 Fed. Appx. 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251-52). Summary judgment "'shall be

entered' against the non-moving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Employee Servs., LLC, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990)). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present "affirmative evidence" to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty Lobby, 477 U.S. at 247-254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. and Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003)). Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient. See Mitchell, 964 F.2d at 584-85.

## III.   ANALYSIS

Pelcha II sets forth the legal standard applicable to ADEA claims. "The ADEA prohibits employers from terminating employees 'because of such individual's age.'" Pelcha II, 988 F.3d at 323 (quoting 29 U.S.C. § 623(a)(1)). To meet the ADEA's "because of" requirement, a plaintiff must "'prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer

6

decision.'"   Id. at 323–24 (quoting Gross v. FBL Fin. Servs., Inc., 577 U.S. 167, 177–78

(2009)).   "[S]atistfying but-for cause requires plaintiffs to show that age '*had a determinative*

*influence on the outcome*' of the employer's decision-making process."   Id. at 324 (emphasis

in original) (quoting Gross, 557 U.S. at 176).

"Plaintiffs may show a violation of the ADEA through either direct or circumstantial

evidence."   Id. (citing Scheik v. Tecumseh Pub. Schs., 766 F.3d 523, 529 (6th Cir. 2014)).

> If a plaintiff cannot show age discrimination with direct evidence, plaintiffs may attempt to show age discrimination with circumstantial evidence, which we evaluate using the three-step burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 – 06 [] (1973).   This analysis "first requires the plaintiff to establish a prima facie case of discrimination."   Miles [v. S. Cent. Hum. Res. Agency, Inc.], 946 F.3d [883,] 887 [(6th Cir. 2020)].   If the plaintiff succeeds, the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the termination.   Id.   Once the employer identifies a reason, the burden shifts back to the plaintiff to prove the employer's reason is a mere pretext.   Id.   If the plaintiff prevails, the factfinder may reasonably infer discrimination.   Id.

> Regardless of the method, though, the ultimate inquiry remains the same: "the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age."   Barnes v. GenCorp, Inc., 896 F.2d 1457, 1466 (6th Cir. 1990).

Pelcha II, 988 F.3d at 324–25.   "[T]o defeat summary judgment, [Walls] must show a genuine

dispute of material fact that, if resolved in [his] favor, could persuade a reasonable juror that

age was the but-for cause of [his] termination."   Id. at 324.

A.   *Direct Evidence*

Walls's direct evidence argument focuses on allegedly discriminatory statements made

by District Manager Smith.   (ECF No. 62-2 at PageID 695–97; see also ECF No. 50 at PageID

463.)   "In determining the materiality of allegedly discriminatory statements, we consider four

factors, none of which are dispositive: '(1) whether the statements were made by a decision-

maker…; (2) whether the statements were related to the decision-making process; (3) whether

the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.'" <u>Pelcha II</u>, 988 F.3d at 325 (quoting <u>Diebel v. L & H Res., LLC</u>, 492 F. App'x 523, 527 (6th Cir. 2012)). "This is a high bar." <u>Id.</u>

The Parties agree, at least for purposes of summary judgment, that Smith made the following statements:

(1) "John Walls heard [] Smith refer to older managers as 'old timers' and state[] that 'he's too old to do his job. He needs to find something in else' in reference to [Mr.] Thompson, an older manager." (Plaintiff's SOF ¶ 4.)

(2) "Smith called John Walls 'the old dog' and stated that he 'was the most tenured' and '[] had been around longer than anyone.'" (<u>Id.</u> ¶ 5.)

(3) "Smith terminated [Ms.] Johnson and asked John Walls to travel to [the store location] to serve as a witness. While [the manager] was gathering personal effects from her office, Smith told Walls that 'she's old, past it, she's untrainable' and that he couldn't work with her." (<u>Id.</u> ¶ 42.)

Smith was Walls's District Manager when he made all these comments and was one of two individuals who made the decision to terminate Walls. But none of the statements relate to Walls's termination, and only the third statement relates to the termination of an employee at all.

Walls did testify in his deposition that Smith's comments regarding older managers as "old timers" and referring to Walls as "the old dog" or the "most tenured" were made "[a]t all of our functions, company meeting, district meeting[.]" (ECF No. 65-1 at PageID 814:10-14.) At least some of his comments, therefore, were not isolated. But the comments relating

specifically to Walls are vague remarks.  That is, the Sixth Circuit has found that comments regarding the duration of employment are vague and do not constitute direct evidence of age discrimination.  See Pelcha II, 988 F.3d at 325 ("[T]he comments were vague in that 'shelf life' and 'expiration date' can refer to how long an employee has spent at a company, not simply their age."); see also Scott v. Potter, 182 F. App'x 521, 526 (6th Cir. 2006) (distinguishing between the concepts of "years of service" and "age" and finding that a statement that the plaintiff should "retire and make everybody happy" was not direct evidence of age discrimination).  Smith's comments regarding Walls are similar and are not "the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age[.]"  Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989) (cited favorably by the Sixth Circuit in Scott, 183 F. App'x at 526).

Smith's comments regarding the two other older managers as being "too old to do [t]his job" and "old, past it, [] untrainable" are less ambiguous remarks, but these comments were made several years prior to the decision to terminate Walls.  (Walls Deposition, ECF No. 63-3 at PageID 758–59 (stating that Ms. Johnson's termination was the first one-on-one meeting Walls had with Smith and that the comments about Mr. Thompson were made "[s]ometime after that"[4]).)  These comments are not related to the decision to terminate Walls and are either too vague or too temporally distant to meet the "high bar" required to establish direct evidence of age discrimination.

Walls argues in his supplemental brief that Smith's comments are more analogous to the comments in both Hannon v. La.-Pac. Corp., 784 F. App'x 444 (6th Cir. 2019) and Willard v. Huntington Ford, Inc., 952 F.3d 795 (6th Cir. 2020) than they are to the comments

---

[4] Mr. Thompson was demoted on August 4, 2015, nearly three years before Walls's termination.  (Def. SOF ¶ 9 & n.1.)

in <u>Pelcha II</u>.  (ECF No. 73 at PageID 873–74.)  However, the comments in <u>Hannon</u> were made over a much shorter period of time (five months, as compared to six years) and included a "more egregious[]" comment interpreted as a reference to plaintiff's post-menopausal issues in addition to comments referring to the plaintiff as "grandma" and "little old lady."  <u>Id.</u> at 448.  And in <u>Willard</u>, the Sixth Circuit did not decide whether the comments constituted direct evidence, considering them instead as compelling circumstantial evidence on the issue of pretext.  <u>Id.</u> at 807.  Furthermore, the age-related comments in <u>Willard</u> were made in the context of asking the plaintiff when he would retire and included comments as egregious as one supervisor stating that he "did not 'know too many people looking for a sixty-five-year-old over-the-hill salesman like you'" and another supervisor stating that the plaintiff was "'too old to be sitting by the door' and that 'younger salesmen' should have that position–a sentiment that [the supervisor] reiterated *the week before* [the plaintiff] was terminated."  <u>Id.</u> at 802.  The comments at issue in this case, comparatively, are (1) not as clearly related to age instead of years of service; (2) not directed at the plaintiff; and/or (3) not related to the decision-making process at issue in this case.  Walls has failed to demonstrate a dispute of material fact under his direct evidence theory.

   B.  *Indirect Evidence*

        Turning to Walls's indirect evidence of age discrimination, the Parties agree that Walls has established a prima facie case of discrimination and that Sterling has articulated a legitimate, nondiscriminatory reason for the termination, specifically, Walls's poor work performance.  (ECF No. 52-1 at PageID 532 & ECF No. 62-2 at PageID 698.)  Therefore, Walls must demonstrate a dispute of material fact that Sterling's legitimate, nondiscriminatory reason is pretext.  Otherwise, Walls's age discrimination claim must fail.

"Plaintiffs typically show pretext in one of three ways: '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that the proffered reasons were insufficient to motivate the employer's action.'" Miles, 946 F.3d at 888 (quoting Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009)). "But these are not the only ways that a plaintiff can establish pretext; these three categories are simply a convenient way of marshaling evidence and focusing it on the ultimate inquiry: did the employer fire the employee for the stated reason or not?" Id. (internal quotations omitted).

Walls argues that he "has sufficient evidence in the record to support a finding of pretext based on all three (3) categories of pretext." (ECF No. 62-2 at PageID 699.) Walls argues first that the proffered nondiscriminatory reason has no basis in fact because (a) Smith falsified and/or forged some of the Counseling Statements; (b) Smith had positive Counseling Statements directly before his termination; and (c) Store 2628 was not the worst performing store in the Memphis District. (Id. at PageID 699–702.) Walls next argues that the proffered nondiscriminatory reason for termination did not actually motivate Walls's termination, citing (a) positive comments regarding Walls's performance in an April 26, 2018 Counseling Statement; (b) praise from Smith for reaching his daily sales goal in May, 2018; and (c) Store 2628's exceeding its sales goals for the month of June, 2018. (Id. at PageID 702–03.) Walls further argues that Walls's poor performance was insufficient to motivate his termination because (a) younger employees with worse sales records were not terminated and (b) Smith reduced age-protected store managers by 75% within his district. (Id. at PageID 703–08.) The Court will address each basis for pretext in turn.

1)      Proffered Reason Has No Basis In Fact

"To show pretext on the ground that the reason for termination had no basis in fact, a plaintiff 'must provide evidence that the employer's allegations never happened.'" Pelcha II, 988 F.3d at 326 (quoting Miles, 946 F.3d at 888–89).   "In this analysis, 'the question is always whether the employer made up its stated reason to conceal intentional discrimination.'" Id. at 326–27 (quoting Chen, 580 F.3d at 400 n.4).   The Court first notes that even Walls appears to concede that he cannot show that the reason for termination has *no* basis in fact: he qualifies his statement that the proffered legitimate nondiscriminatory reason for termination has no basis in fact with the phrase "to an extent."  (ECF No. 62-2 at PageID 700.)  Regardless, the Court will also discuss each of his arguments that Walls's performance was satisfactory.

Walls first argues that VP Daughtery's decision to terminate Walls's employment was based in large part on the *number* of performance-related counseling statements in Walls's personnel file, and that because some of those statements were falsified or forged, there is no factual basis supporting the decision to terminate Walls's employment.  (Id. at PageID 699–702.)  Sterling denies that any of Walls's counseling statements were falsified or forged, but in evaluating Sterling's Motion, the Court must evaluate the evidence in the light most favorable to Walls, who testified in his deposition that he did not see the 2013 Counseling Statement he allegedly refused to sign and that the signature on two other Counseling Statements was not his.  (ECF No. 63-3 at PageID 761-62.)

But Sterling also argues that this fact, even if taken to be true, is not material for summary judgment.  (Defendant's Response to Plaintiff SOF, ECF No. 66 ¶ 6.)  There are at

least ten[5] Team Member Counseling Reports, Employee Counseling Reports, and Store Performance Appraisals attached to Sterling's Motion and that the receipt, underlying facts, and discussion of which Walls does not dispute.  (Plaintiff's Response to Def. SOF, ECF No. 62-1 ¶¶ 15–48.)  Walls's arguments that the allegedly falsified Counseling Statement "may have played an important role" in VP Daughtery's decision to terminate Walls and that it "is plausible that other Store Managers had very similar number[s] of Counseling Reports during their respective tenure[s]" are too speculative to serve as evidence supporting a conclusion that Walls's performance was not, in fact, poor.  See Jennings v. Cnty. of Monroe, 630 F. App'x 457, 555 (6th Cir. 2015) ("A party cannot defeat summary judgment with '[c]onclusory allegations, speculation, and unsubstantiated assertions.'" (quoting Gooden v. City of Memphis Police Dep't, 67 F. App'x 893, 894 (6th Cir. 2013))).

Sterling's proffered nondiscriminatory reason for Walls's termination is Walls's "poor work performance and, specifically, the deficient sales number[s] for his store for a number of years." (ECF No. 52-1 at PageID 535.)  Walls does not dispute that he failed to meet his sales targets in six of his seven years reporting to Smith.  (Plaintiff's Response to Def. SOF, ECF No. 62-1 ¶ 13.)  That two or three[6] of at least twelve Counseling Statements in Walls's personnel file were false or forged does not alter the underlying facts regarding Walls's sales

---

[5] Ex. 13 to Defendant's Motion, an Employee Counseling Report dated July 30, 2016, appears to be one of the Counseling Statements that Walls alleges was forged.  (Compare ECF No. 52-12 at PageID 584 and ECF No. 62-2 at PageID 701; see also Walls Deposition, ECF No. 63-3 at PageID 761:13-25 & 762:1-6.)  However, in Plaintiff's Response to Def. SOF, Plaintiff does not dispute that he received the July 30, 2016 report and that he was counseled that he "must correct stores performance and meet the company's expectation for Sales." (Plaintiff's Response to Def. SOF, ECF No. 62-2 ¶¶ 32–34.)  Because the Counseling Statement is the same, and the issue appears to relate to confusion regarding the date used to refer to the statements, the Court has not included this Counseling Statement in the ten undisputed reports.

[6] It appears that Walls is alleging that three statements were false or forged, according to Plaintiff's Response to Defendant's Motion for Summary Judgment and Walls's own deposition testimony.  (See ECF No. 62-2 at PageID 702 & ECF No. 63-3 at PageID 761–62.)  However, the Court can only identify two documents by date that Plaintiff alleges are false or forged (the July 30 or August 27, 2016 Employee Counseling Report and the August 9, 2013 Counseling Statement) and, based on Plaintiff's Statement of Additional Facts In Dispute, Walls is only alleging two falsified and/or forged counseling statements exist, one of which is both false and forged. (See ECF No. 63 ¶¶ 6–11.)

numbers, and the evidence suggesting the falsification or forging of those documents does not demonstrate that Sterling's proffered reason for termination has no basis in fact.

Walls briefly mentions that "he received positive Counseling Statements immediately before his termination" as support for his argument that Sterling's nondiscriminatory reason for termination has no basis in fact.  (ECF No. 62-2 at PageID 700.)  Because Walls discusses this issue in more detail when arguing that Sterling's proffered reasons did not motivate Walls's termination, the Court also discusses that argument in more detail below.  To the extent that Walls did receive positive Counseling Statements immediately prior to his termination, however, that fact does not mean that the deficient sales numbers of Store 2628 for the years during which Smith was Walls's supervisor have no basis in fact.

Walls also argues that Store 2628, under Walls's leadership, "was never last in sales." (ECF No. 62-2 at PageID 702.)  Whether Walls's sales numbers were the *worst*, though, does not mean that Sterling "made up" the fact that Walls's sales numbers were *poor*.  Pelcha II, 988 F.3d at 326.  Walls also admitted in his deposition that he was managing one of the lowest performing stores in the Memphis District in the first half of 2018.  (Walls Deposition, ECF No. 52-4 at PageID 557:3-16.)  Ultimately, Walls cannot demonstrate that Sterling's proffered legitimate nondiscriminatory reason for his termination is pretextual because it has no basis in fact.

       2)     <u>Proffered Reason Did Not Motivate Termination</u>

Walls next argues that Sterling's proffered reason for termination did not actually motivate his termination because, in the three months prior to his termination, supervisors evaluated his performance positively.  (<u>Cf.</u> ECF No. 62-2 at PageID 702–03.)  This argument requires a demonstration that the discriminatory basis for termination is more likely than the

14

proffered reason, based on the "sheer weight of the circumstantial evidence of discrimination." Joostberns v. United Parcel Servs., Inc., 166 F. App'x 787, 791 (6th Cir. 2006).

Walls first points to the April 26, 2018 Counseling Statement from VP Davis, citing language such as "John continues to be the only individuals [sic] that can make personal sales standard" and that "Manager and AM is leading by example." (ECF No. 62-2 at PageID 703.) However, arguing that this Counseling Statement demonstrates that Walls's supervisors viewed his performance as good and not poor is disingenuous when, in the same quote, VP Davis also notes "[t]eam continues to underperform" and "[t]he expectation for a store manager is to get multiple team members to achieve their personal goal." (Id.) As Sterling properly argues, the remainder of the April 26, 2018 Counseling Statement notes that it is the Store Manager's responsibility to ensure that the store itself is performing above expectations, and that even if Walls's performance as a salesperson was satisfactory, his performance as a team manager was poor. (ECF No. 65 at PageID 810; see also ECF No. 63-11.)

Walls also states that "[I]n May 2018, Plaintiff received praise from the District Manager for reaching his daily sales goals." (ECF No. 62-2 at PageID 703.) But Walls fails to properly cite to a point in the record to support this assertion, with the citation simply stating "Third Supp. Resp…" (Id. at PageID 703 n. 10.) The Court cannot find the evidence supporting this assertion, and even if it were true, the Court would again note that there is a meaningful distinction in evaluating a *manager's* performance in leading a team of salespeople and a *salesperson's* individual work performance.

Walls lastly argues that "[o]n June 18, 2018, the day of Walls' termination, his store was at 222.3% of the goal for the entire month of June 2018." (ECF No. 62-2 at PageID 703.)

Sterling argues both that the document offered in support of this assertion is unauthenticated and that the same document demonstrates that the performance for the year was below the year-to-date goals, even if the monthly performance was well above the month's goals. (Defendant's Response to Plaintiff's SOF, ECF No. 66 ¶ 40.)  The Court would add that this document is titled "Monthly Performance Standards for June 2019" and therefore has nothing to do with Walls's work performance in June 2018.  (ECF No. 63-13.)

Walls has failed to provide evidence supporting an argument that his supervisor's acknowledged that his work performance was satisfactory in the months directly prior to his termination.  Without such evidence, his argument that Sterling's proffered reason for termination is pretextual because it did not actually motivate Walls's termination fails.

   3) <u>Proffered Reason Insufficient to Motivate Termination</u>

"A plaintiff can prove a party's asserted reason was pretext by arguing that the reason was 'insufficient motivation for the employment action.'"  <u>Anderson v. Target Stores, Inc.</u>, No. 2:19-cv-02889-MSN-cgc, 2021 WL 2639026, at *14 (W.D. Tenn. June 25, 2021) (quoting <u>Joostberns</u>, 166 F. App'x at 791).  "To make this argument, a plaintiff usually points to 'other employees, particularly employees not in the protected class, [who] were not fired even though they were engaged in substantially identical conduct' to [that] which resulted in the plaintiff's termination."  <u>Id.</u> at *17 (quoting <u>Blizzard v. Marion Tech. Coll.</u>, 698 F.3d 275, 286–87 (6th Cir. 2012)).

    a. *Younger Employees With Worse Sales Records*

Walls contends that Smith did not terminate multiple Store Managers who were younger than Walls and who had worse sales records than Walls.  (ECF No. 62-2 at PageID 704–05; <u>see also</u> Plaintiff's SOF ¶ 20.)  In support of this argument, Walls specifically

discusses three individuals: Tiffany Robinson, Cassie Worley and Chastity Gordon-Fortune. (Plaintiff's SOF ¶¶ 31–37.)

As to Ms. Robinson, Walls asserts that her 2018 year-end sales goals were down 21.5% from her sales goals, compared to Walls' sales goals being down 3.6%, but that Ms. Robinson was not terminated until July 2020.  (Plaintiff's SOF ¶¶ 30–32.)  Sterling argues in response that (1) Ms. Robinson was hired nine months into the fiscal year to which that sales data applies and (2) although Ms. Robinson was terminated in July, 2020, she was demoted from store manager position in June 2019.  (Defendant's Response to Plaintiff's SOF, ECF No. 66 ¶¶ 31–32.)  Even if Ms. Robinson was not terminated from her manager position until July 2020, though, that was only approximately one and a half years after the 21.5% sales deficit.  Walls, on the other hand, was not terminated until he had a sales growth deficit for three straight fiscal years, and his sales growth for the fiscal year ending in January 2019 was down 32.9% as of May 2018.  Walls has not demonstrated that Ms. Robinson "engaged in substantially identical conduct" to Walls, such that her later-in-time termination is proof that Sterling's proffered reason for Walls's termination is pretextual.

As to Ms. Worley, although her sales performance in fiscal year 2018 was down 29.5% (see Defendant's Response to Plaintiff's SOF, ECF No. 66 ¶ 33), she was 47 years old on June 30, 2018 and therefore a member of the same protected class as Walls (ECF No. 52-16 at PageID 591).  There is no evidence before the Court regarding Ms. Worley's termination date.  Concluding that Ms. Worley was not terminated, the fact that her sales performance did not result in her termination supports Sterling's proffered reason for Walls's termination, rather than demonstrating pretext.  If Smith was terminating sales managers based on their

age, Smith would also have terminated Ms. Worley because of her age, using the pretext of her poor sales performance in fiscal year 2018.[7]

As to Ms. Gordon-Fortune, Walls argues that "her sales for fiscal 2019 year-end were $852,000" but that she was never written up for poor performance and her termination was never sought.  (ECF No. 62-2 at PageID 705.)  But in Smith's deposition testimony, to which Walls cites in support of his assertions regarding Ms. Gordon-Fortune, Smith also states that the fiscal year 2019 sales data included Mr. Walls's performance from the first four or five months of the year and only included Ms. Gordon-Fortune's performance for the last five months of the fiscal year.  (Smith Deposition, ECF No. 63-1 at PageID 738:19-24.)  Walls has not demonstrated that Ms. Gordon-Fortune's conduct was "substantially identical" to Walls's.

More generally, Walls states that "Smith admits that he never sought to terminate other young female managers with store performance much worse than Walls' store performance" and that "[e]ven younger employees in Walls' store that had worse sales records were not terminated."  (ECF No. 62-2 at PageID 705.)  Sterling correctly points out that the citation offered in support of Walls's first assertion does not support it.  (Defendant's Response to Plaintiff's SOF, ECF No. 66 ¶ 38.)  Smith testified in the cited pages of his deposition that he did not know the age of the people who had worse sales performances than Walls, and also stated that Store 2628 was the only store not in a leadership transition.  (Smith Deposition, ECF No. 63-1 at PageID 735–36.)  And as to Walls's second general assertion, that younger employees in Walls's store were not terminated with worse sales records, Walls cannot argue that those employees were similarly situated to Walls, as none were employed in

---

[7] If Ms. Worley was, in fact, terminated and that evidence is simply not before the Court, the Court notes that it would analyze the facts regarding her employment in the same way it analyzed the facts regarding Ms. Robinson's employment; that is, Ms. Worley, like Walls, was given a period of time to attempt to correct her sales performance prior to her termination.

the leadership role of Store Manager.  See Pelcha II, 988 F.3d at 328 ("[E]mployees who are in higher positions can be held to higher standards." (citing Miles, 946 F.3d at 894)).

Within this same section of Walls's response in opposition to Sterling's Motion, Walls also argues that Walls's poor sales performance in 2018 was because Smith "deliberately understaffed" Store 2628.[8]  (ECF No. 62-2 at PageID 706.)  Although Walls did testify that Smith made it impossible to recruit and hire people by not approving new hires or by offering low wages, he then testified that Smith "came in and reduced my staff, which is why my numbers were down February through May of '18."  (Id.; see also Walls Deposition, ECF No. 63-3 at PageID 760.)  Walls also specifically attributed the reduction in staff to Smith's removing all of the *seasonal* part-time people who were hired around Christmas time.  (ECF No. 63-3 at PageID 760:10-11.)

The Court first notes that, even assuming that Smith did deliberately understaff Store 2628 in the time period Walls stated, such understaffing does not explain Walls's poor sales performance in fiscal years 2012, 2013, 2015, 2016 and 2017.  (Def. SOF ¶ 12.)  Second, it is undisputed that Walls told Smith that he felt he needed training on how to recruit employees and that Smith created two Indeed job postings for Store 2628 on October 25, 2017.  (Plaintiff's Response to Def. SOF ¶¶ 41–44.)  Although the Court must view the evidence in the light most favorable to Walls while evaluating Sterling's Motion, this undisputed evidence contradicts Walls's testimony that Smith deliberately understaffed Store 2628, particularly in

---

[8] Also in this section of its Response, Walls raises his argument that "Smith has a documented history of manipulating store staffing to further his sexual desires," citing at least two sexual harassment claims filed against Smith.  (ECF No. 62-2 at PageID 706–07.)  But this Court has previously found that "evidence that Smith engaged in extensive sexual harassment… would not be relevant to Walls's claims of age discrimination[.]"  (ECF No. 25 at PageID 192.)  This evidence plainly would be relevant had Walls brought a case based on gender discrimination, but he did not.  Walls's complaint "asserts a narrow allegation that Smith terminated his employment to make room for a younger employee" (ECF No. 56 at PageID 645); evidence tending to support a claim of sexual or gender discrimination is irrelevant to Walls's isolated claim of age discrimination.

Case 2:19-cv-02844-JPM-tmp   Document 90   Filed 08/10/21   Page 20 of 21   PageID 1020

light of Walls's additional testimony that the reduction in staff was due to the termination of seasonal employees.

        *b.  Statistical Evidence Regarding Termination of Age-Protected Employees*

Finally, Walls argues that Smith "reduced age-protected store managers by 75% within his district," characterizing this as a "purge of older store managers within [Smith's] district[.]" (ECF No. 62-2 at PageID 707.) Sterling argues that Mr. Smith "removed underperforming Store Managers of all ages – even those in their 20s and 30s, and hired six Store Managers over the age of 40."[9] (ECF No. 65 at PageID 811.)

"It is true that 'appropriate statistical data showing an employer's pattern of conduct toward a protected class as a group can, if unrebutted, create an inference that a defendant discriminated against individual members of the class.'" Diebel, 492 F. App'x at 532 (quoting Barnes, 896 F.2d at 1466). "To create such an inference, however, 'the statistics must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity.'" Id. (quoting Bender v. Hecht's Dep't Stores, 466 F.3d 612, 622 (6th Cir. 2006) (internal quotations omitted)). "Incomplete or inapplicable analyses, simplistic percentage comparisons, and small sample sizes produce statistical analyses with little probative value." Schollenbarger v. Planes Moving & Storage, 297 F. App'x 483, 485 (6th Cir. 2008).

This case involves a small sample size, and the statistical evidence is rebutted by the fact that, of all the terminated Store Managers, regardless of age, Walls was the Store Manager given the most amount of time to address his store's underperformance. (Def. SOF ¶

---

[9] Although Walls disputes the reason for the termination of younger Store Managers, Walls does not dispute that every Store Manager who was employed at the time Smith became District Manager was no longer employed at the time of Walls's termination. (Plaintiff's Response to Def. SOF, ECF No. 62-1 ¶¶ 7, 9.) Walls also does not dispute that Smith hired six age-protected Store Managers and that two of them were still employed at the time of Walls's termination. (Id. ¶ 10.)

10.)  When all but one of a district's store managers are no longer employed within four years of the hiring of a new district manager, but the last of those store managers remains employed for an additional two and a half years, it is difficult to conclude that there has been an intentional "purge" of age-protected store managers.

### C.  Summary

Ultimately, Walls must prove that his age was the but-for cause of his termination in order to prevail on his ADEA claim.  Walls has failed to demonstrate a dispute as to material fact "sufficient to persuade a reasonable juror that age was the but-for cause of" Walls's termination, because the objective and undisputed facts demonstrate that Walls's sales performance was poor for nearly every year that he was the manager of Store 2628 while Smith was District Manager, and that Walls was given nearly six years to improve prior to his termination.  Pelcha II, 988 F.3d at 324.  Walls has not presented evidence demonstrating a dispute as to material fact that "age was *the* determinative reason" for his termination.  Id.

## IV.   CONCLUSION

For each of the reasons set forth above, Sterling's Motion for Summary Judgment is **GRANTED** and Walls's Motion for Partial Summary Judgment is **DENIED AS MOOT**.  Walls's only remaining claim for a violation of the ADEA is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**, this 10th day of August, 2021.

                                    /s/ Jon P. McCalla
                                    JON P. McCALLA
                                    UNITED STATES DISTRICT JUDGE